UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JEAN G. BOOS,

                                   Plaintiff,

v.                                                               3:04-CV-1284
                                                                 (NAM/GHL)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                                   Defendant.

APPEARANCES:                                    OF COUNSEL:

HINMAN, HOWARD LAW FIRM                          EUGENE D. FAUGHNAN, ESQ.
*Counsel for Plaintiff*
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, New York 13902-5250

HON. GLENN T. SUDDABY                            WILLIAM H. PEASE, ESQ.
United States Attorney for the                   Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

### REPORT AND RECOMMENDATION[2]

## I.        BACKGROUND

### A.        Procedural History

Plaintiff filed an application for disability insurance benefits ("DIB") on December 12,

---

[1]  Michael J. Astrue became Commissioner of Social Security on February 12, 2007.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit for Jo Anne B. Barnhart.

[2]  This matter was referred to me for report and recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

2002.  (Administrative Transcript ("T") at 50E-G, Dkt. No. 4)  The application was denied

initially.  (T. at 23, 36-39.)  Plaintiff requested a hearing before an Administrative Law Judge

("ALJ") which was held on April 29, 2004.  (T. at 285-306.)  On July 10, 2004, the ALJ issued a

decision finding that Plaintiff was not disabled.  (T. at 14-22.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final

decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on

October 13, 2004.  (T. at 4-6.)  Plaintiff commenced this action on November 4, 2004.  (Dkt. No.

1.)

B.      **The Contentions**

Plaintiff makes the following claims:

(1)      The Commissioner erred in determining that the Plaintiff was capable of light

work.  (Dkt. No. 5 at 5-7.)

(2)      The Commissioner erred in failing to give controlling weight to the opinions of

treating sources.  (Dkt. No. 5 at 7-8.)

(3)      The Commissioner erred in finding that the Plaintiff's subjective complaints were

only partially credible.  (Dkt. No. 5 at 8-11.)

(4)      The Commissioner erred in determining that jobs existed in sufficient numbers in

the national and regional economy that the Plaintiff could perform.  (Dkt. No. 14 at 11-12.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus

should be affirmed.  Dkt. No. 6.

2

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or

supplemental security income benefits must establish that he is "unable to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).

In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)),

the Social Security Administration ("SSA") has promulgated regulations establishing a five-step

sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2005).  "If at any

step a finding of disability or non-disability can be made, the SSA will not review the claim

further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two,
> the SSA will find non-disability unless the claimant shows that he
> has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the

claimant's] physical or mental ability to do basic work activities."
[20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled; if so, the claimant qualifies.  [20
C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment
is not on the list, the inquiry proceeds to step four, at which the
SSA assesses whether the claimant can do his previous work;
unless he shows that he cannot, he is determined not to be disabled.
If the claimant survives the fourth stage, the fifth, and final, step
requires the SSA to consider so-called "vocational factors" (the
claimant's age, education, and past work experience), and to
determine whether the claimant is capable of performing other jobs
existing in significant numbers in the national economy.  [20
C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v.
Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the
plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the
defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs
which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540
U.S. at 25; other citations omitted).

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the
correct legal standards were applied and whether substantial evidence supports the decision.
*Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003);
*Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d
983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably
doubts whether the proper legal standards were applied, even if the decision appears to be

4

supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE PLAINTIFF

Plaintiff was born on March 9, 1952.  (T. at 50E.)  She is a college graduate and previously worked as a Red Cross blood collections phlebotomist. (T. at 64-65, 85.)  Plaintiff

alleges disability due to arthritis, fibromyalgia,[3] major depressive disorder, hypertension, and anxiety.  (Dkt. No. 14 at 4.)

## IV.    THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the alleged onset date; (2) Plaintiff had severe fibromyalgia and depression, but they did not meet or equal a listed impairment; (3) Plaintiff's allegations of disabling symptoms were not fully credible; (4) Plaintiff had the residual functional capacity ("RFC") to perform the requirements of light work, except for lifting more than twenty pounds occasionally and standing/walking for more than six hours in an eight-hour workday, bending, stooping, kneeling, crouching, crawling, or climbing stairs more than occasionally, continuously reaching, working near unprotected heights, working in an environment where she would have concentrated exposure to high humidity or extreme cold, traveling to unfamiliar places, working around dangerous moving machinery, interacting frequently with other workers/supervisors, changing work settings or rules and procedures more than occasionally, working in a stressful environment other than that typically found in routine, repetitive, unskilled work, and performing any work that cannot be done by someone with a moderate limitation and ability to complete a normal work week without interruption from psychologically based symptoms such that the deficit to work performance is at less than 20%; (5) Plaintiff could not perform her past relevant work as a phlebotomist; and (6)

---

[3]  Fibromyalgia is "a common nonarticular rheumatic syndrome characterized by myalgia and multiple points of focal muscle tenderness to palpation (trigger points).  Muscle pain is typically aggravated by inactivity or exposure to cold.  This condition is often associated with general symptoms, such as sleep disturbances, fatigue, stiffness, [headaches], and occasionally [depression]."  Medical Dictionary Online, *available at* http://www.online-medicaldictionary.org/omd.asp?q=fibromyalgia (citing ADAMS ET AL., PRINCIPLES OF NEUROLOGY 1494-95 (6th ed.) (last visited Sept. 20, 2007)).

using the testimony of a vocational expert as well as Medical-Vocational Rule 202.14, there were

a significant number of jobs in the national economy that Plaintiff could have performed, thus

she was not disabled.  (T. at 21-22.)

## V.    DISCUSSION

### A.    Whether the Commissioner Erred in Determining That the Plaintiff Was Capable of Light Work and That the Opinions of Plaintiff's Treating Physicians Regarding Plaintiff's RFC Were Entitled to Little Weight[4]

Plaintiff argues that the ALJ erred in finding that she was capable of performing a

significant range of light work.[5]  (Dkt. No. 5 at 5-6.)  Plaintiff further argues that in making this

RFC assessment, the ALJ erred in failing to give controlling weight to the opinions of her

treating physicians, Drs. Ihab A. Dana and Marianne Santioni.  (Dkt. No. 5 at 7-8.)  Defendant

contends that the ALJ's findings are supported by substantial evidence and should be affirmed.

(Dkt. No. 6 at 4-10.)

As stated previously, the ALJ found that Plaintiff was

> limited to light work (or work requiring lifting no more than 20
> pounds occasionally and standing/walking 6 hours in an 8 hour
> day) requiring no more than occasional bending, stoopoing [sic],
> kneeling, crouching, crawling or climbing stairs, no concentrated
> exposure to high humidity or extreme cold, no travel to unfamiliar

---

[4] Because of the interrelatedness of Plaintiff's first two claims, (*see* I.B. above), they are being addressed together.

[5] Light work is defined by the CFR as:
> [L]ifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even though the weight
> lifted may be very little, a job is in this category when it requires a good
> deal of walking or standing, or when it involves sitting most of the time
> with some pushing and pulling of arm or leg controls.  To be considered
> capable of performing a full or wide range of light work, you must have
> the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (2005).

places, no work around dangerous maoving [sic] machinery, no
work at unprotected heights, no continuous reaching, no frequent
interaction with other workers/supervisors, no more than occasinal
[sic] change to the work settings, rules procedures, no more stress
than is typically found in routine, repetitive, unskilled work, and
that can be performed by someone with a moderate limitation to
the ability to complete a normal workweek without interrrupoiton
[sic] from psychologically based symptoms such that the deficit to
work performance is at less than 20%.

(T. at 21.)

In reaching this conclusion, while the ALJ acknowledged and considered Plaintiff's

fibromyalgia and depression, as evident from the ALJ's imposition of limitations placed on the

environment in which Plaintiff could perform light work, the ALJ relied upon a physical residual

functional capacity assessment from a state agency consultant.  (T. at 16-19.)  However,

Plaintiff's treating physicians, Drs. Dana and Santioni, disagreed with the state agency

consultant's conclusions and instead agreed with a Medical Source Statement completed by Todd

Mansfield, a physical therapist, who found Plaintiff could only perform sedentary work.[6]  (T. at

269-70, 279-80.)  The ALJ accorded little weight to the assessment of Mansfield, stating that it

was based in large part on Plaintiff's subjective representations, that he was not a medical doctor

and did not perform a medical examination of Plaintiff, and the assessment was inconsistent with

the reports of Drs. Dana and Santioni, who did not document pain and limitations to the extent

---

[6]  Sedentary work involves:
lifting no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools.  Although a
sedentary job is defined as one which involves sitting, a certain amount
of walking and standing is often necessary in carrying out job duties.
Jobs are sedentary if walking and standing are required occasionally and
other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a).

claimed by Plaintiff.  (T. at 16.)  The ALJ also noted that Mansfield had administered isometric

testing that was performed inconsistently.  (T. at 16).  In light of the little weight he gave to

Mansfield's assessment, the ALJ found that Drs. Dana and Santioni's concurrence with

Mansfield's opinion was also worth little weight.  (T. at 17, 19.)

       In regard to the ALJ's rejection of Mansfield's assessment of Plaintiff's physical ability to

do work-related activities on the ground that Mansfield was a "non-medical person," the

Regulations state that although a physical therapist is not listed as an "acceptable medical source"

who can give a medical opinion establishing an impairment, the physical therapist's opinion may

be used "[i]n addition to evidence from the acceptable medical sources list . . . to show the

severity of [a claimant's] impairment(s)[.]"  20 C.F.R. §§ 404.1513(a) & (d)(1).

Notwithstanding the Regulation, the ALJ in this case did not utilize Mansfield's opinion as

additional evidence to that of Plaintiff's treating physicians.  Instead, while claiming to give

Mansfield's as well as Drs. Dana and Santioni opinions "little weight," the ALJ in essence

rejected all of their opinions.  *See Rivera v. Bowen,* 665 F. Supp. 201, 206 (S.D.N.Y.1987) (even

if chiropractor or physical therapist cannot be considered treating physicians, all courts agree that

their opinions must be accorded some weight).  By disregarding such opinions, the ALJ erred

because, as discussed below, Mansfield's assessment was consistent with the medical evidence

and should have been considered in determining Plaintiff's RFC.

       As for the weight accorded to the opinions of Plaintiff's treating physicians, the medical

opinions of a treating physician[7] are to be given "controlling weight" as long as they are "well-

---

[7]  "Treating source" is defined as one's own physician, psychologist, or other acceptable medical
source who provides medical treatment or evaluation and who has, or has had, an ongoing treatment
relationship with the patient/plaintiff/claimant.  20 C.F.R. § 404.1502 (2005).

supported by medically acceptable clinical and laboratory diagnostic techniques" and are not

inconsistent with other substantial evidence contained in the record.  20 C.F.R. § 404.1527(d)(2)

(2005).  In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the

following guidance:

> [T]he opinion of the treating physician is not afforded controlling
> weight where, as here, the treating physician issued opinions that
> are not consistent with other substantial evidence in the record,
> such as the opinions of other medical experts.  *See Veino v.
> Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's
> opinion is not controlling when contradicted "by other substantial
> evidence in the record"); 20 C.F.R. § 404.1527(d)(2).  Here, the
> key medical opinions submitted by Dr. Elliott to the ALJ were not
> particularly informative and were not consistent with those of
> several other medical experts.  Thus, Dr. Elliot's opinion as the
> treating physician does not sustain controlling weight.

*Halloran v. Barnhart*, 362 F.3d at 32.

However, "[a]n ALJ who refuses to give controlling weight to the medical opinion of a

treating physician must consider various 'factors' to determine how much weight to give to the

opinion." *Id.*  These factors include: (1) the length of the treatment relationship and frequency of

examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in

support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether

the opinion is from a specialist; and (6) any other factors that tend to support or contradict the

opinion.  20 C.F.R. § 404.1527(d)(2) (2005).

The ALJ determined that the opinions of Drs. Dana and Santioni deserved little weight

because they agreed with Mansfield's assessment, and also because their opinions were

inconsistent with their own objective clinical findings.  (T. at 16-17.)  However, the objective

medical evidence in the record supports their opinions and is consistent with Mansfield's

findings.[8]  In dealing with cases where a diagnosis of fibromyalgia is present, such as in this case, the Second Circuit acknowledged that "fibromyalgia is a disabling impairment" which "eludes . . . measurement" through objective medical evidence because there are "no objective tests which can conclusively confirm the disease."  *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (citations omitted); *see also Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 44-45 (2d Cir. 1991).  As the Second Circuit aptly noted,

> [i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather, it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients.

*Lisa*, 940 F.2d at 45 (citation omitted); *see also The Merck Manual* 481 (17th ed. 1999) (noting that fibromyalgia is recognized by certain "typical" symptoms and through exclusion of other diseases).

Here, medical reports by both Drs. Dana and Santioni indicate that as early as January 2002, Plaintiff was diagnosed with fibromyalgia.  (T. at 114, 146.)  On January 3, 2002, Dr. Dana noted that Plaintiff had "a lot of aches and pains all over" and that although she did not appear to be in acute distress and many of the results of the examination were normal, she had generalized tenderness.  (T. at 114.)  The same day, Plaintiff was evaluated by Dr. Santioni, who found that she had multiple tender points upon examination, including tender DIPS, MCPS, wrists, MTPS, and ankles.  (T. at 146.)  Dr. Santioni reported that Plaintiff's dexterity was not good, she could

---

[8]  *See infra* p. 15.

not lift or stand/sit for a prolonged period, she was fatigued, and she was having trouble sleeping. (T. at 147.)  Plaintiff was prescribed Celebrex, Klonopin, as well as several vitamins to treat the fibromyalgia, and occupational and physical therapy was recommended.  (T. at 146.)

During the course of 2002, Dr. Dana's evaluations of Plaintiff revealed virtually normal results in all her tests, namely that she had a normal range of motion, she was neurologically intact, and she did not appear to be in any acute distress.  (T. at 104-12, 221-23.)  However, on many occasions within the same year, Plaintiff complained of fatigue and pain, and Dr. Dana indicated several times that there was generalized discomfort and tenderness all over her musculoskeletal area.  (T. at 105-12, 221-23.)  Dr. Santioni also evaluated Plaintiff several times during the year and made many of the same observations and findings as Dr. Dana.  (T. at 144-45, 147, 250-51, 260-61.)  Then, on December 24, 2002, after an examination with Dr. Santioni, Plaintiff still complained of pain and was prescribed Amitriptyline.  (T. at 143.)  Dr. Santioni stated that Plaintiff's condition remained unchanged and that she had 18 out of 18 tender points with tenderness over her PIPS, MCPS, and wrists without synovitis.[9] (T. at 143.)

In 2003 and 2004, Plaintiff continued to be treated by Drs. Dana and Santioni for her fibromyalgia as well as other ailments.  (T. at 212-20, 246-49, 255-59, 281.)  While Plaintiff complained of pain, many of the tests performed by Dr. Dana again yielded normal results.  (T. at 212-20.)  However, during several examinations, Dr. Dana opined that Plaintiff experienced a lot of discomfort and tenderness in her paraspinal muscles.  (T. at 212, 216, 218, 281.)  In addition, on June 30, 2003, Dr. Santioni noted that Plaintiff's physical examination revealed that she still

---

[9] *See* Fibromyalgia Symptoms, *available at* http://www.fibromyalgia-symptoms.org/ fibromyalgia_diagnosis.html (last visited Sept. 21, 2007) (diagraming the 18 points of tenderness).

had 18 out of 18 tender points.  (T. at 248.)  At that time, Dr. Santioni upped the dosage on

Plaintiff's medications, Elavil and Bextra.  (T. at 248.)  Then, from October through December

2003, Plaintiff received massage therapy in an attempt to alleviate some of her pain.  (T. at 198-

210, 235-45.)

        Based on this evidence, Mansfield's assessment was entirely consistent with the signs and

symptoms of fibromyalgia.  Plaintiff was diagnosed with the disease and experienced the classic

symptoms associated with fibromyalgia, including fatigue and sleep disturbances.  Furthermore,

as is common with fibromyalgia, many of her test results were within the normal range despite

the fact that she suffered from pain and tenderness all over her body.  Even though the ALJ

determined that Mansfield's report was unacceptable, it was in fact corroborated by substantial

evidence in the record.  Accordingly, Mansfield's RFC assessment was correct and should not

have been rejected, and Drs. Dana and Santioni's opinions should have been given controlling

weight.

        The ALJ further compounded her mistake of giving the opinions little weight when she

failed to discuss and take into account the factors set forth in 20 C.F.R. § 404.1527(d)(2).  (*See* T.

at 16-19.)  As stated previously, these factors include: (1) the length of the treatment relationship

and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the

medical evidence in support of the opinion; (4) the consistency of the opinion with the record as

a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to

support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2).  In this case, the ALJ clearly

neglected to consider the length, nature, and extent of Plaintiff's relationship with Drs. Dana and

Santioni in determining the weight to be given to their opinions.  While the ALJ gave significant

weight to the state agency consultant who examined her on only one occasion, she dismissed the opinions of Drs. Dana and Santoni even though they had treated Plaintiff for approximately two years and examined her numerous times.  Furthermore, their diagnoses and evaluations were supported by medical evidence and were consistent with the record as a whole.  There was no evidence presented from specialists or the like that contradicted the opinions of Drs. Dana and Santoni, apart from the state agency consultant, who again never treated Plaintiff and only observed her once.  Thus, the ALJ should not have refused to give the treating physicians' opinions controlling weight.[10]

Intertwined with the ALJ's rejection of Plaintiff's treating physicians' opinions regarding Mansfield's RFC assessment, the ALJ gave significant weight to the state agency consultant's physical RFC assessment in determining that Plaintiff had the RFC to perform light work.[11] Within the state consultant's report, it was opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, sit, stand, and/or walk for six hours in an eight hour workday, and push and/or pull unlimitedly.  (T. at 157.)  The assessment further noted that Plaintiff had frequent limitations in climbing ramps and stairs, balancing, stooping kneeling, crouching, and crawling, though there were no manipulative, visual, or communicative limitations.  (T. at 158-60.)  It was also indicated that Plaintiff should avoid concentrated

---

[10]  Additionally, to the extent Plaintiff argues that the ALJ erred by according little weight to her treating physicians' opinions that she was disabled, the Court finds the ALJ correctly determined that these statements deserved little weight since the final determination of disability and a claimant's inability to work rests with the Commissioner.  20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

[11]  The name of the state agency consultant who completed the assessment is indecipherable.  (T. at 163.)

exposure to extreme cold, wetness, vibration, and hazards, such as machinery and heights.  (T. at 160.)  In making this report, the state agency consultant stated there were no treating source statements regarding Plaintiff's physical capacities in the file.  (T. at 162.)

Mansfield's report, however, stated that Plaintiff could occasionally lift and/or carry ten pounds, frequently lift/and or carry two pounds, stand and/or walk for two hours in an eight-hour workday, and sit for four hours in an eight-hour workday.  (T. at 273-74.)  Mansfield further opined that Plaintiff could never crawl and had occasional limitations in her ability to climb, balance, stoop, crouch, kneel, reach, and push/pull.  (T. at 274-75.)  The report also noted environmental restrictions such as heights, moving machinery, temperature extremes, noise, humidity, and vibrations, but that Plaintiff had no problems handling, feeling, seeing, or speaking.

While the non-exertional limitations[12] noted by the state consultant are in line with those indicated by Mansfield, the reports mainly differ with respect to Plaintiff's exertional limitations.[13]  (*Compare* T. 157-62 *with* 273-75.)  Mansfield's evaluation regarding Plaintiff's exertional impairments renders her ability to do work-related activities within the sedentary range whereas the state consultant's report finds that Plaintiff can perform light work.  (*Compare* T.

---

[12]  Non-exertional limitations refer to limitations affecting the claimant's ability to meet the requirements of a job other than strength demands.  20 C.F.R. § 404.1569a(c).  This includes, *inter alia*, limitations or restrictions in functioning due to nervousness, anxiety or depression, maintaining attention or concentration, understanding or remembering detailed instructions, and performing manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id.*; *see also* S.S.R. 83-14, 1983 WL 31254, at * 1, *Program Policy Statement–Titles II and XVI: Capability to do Other Work – The Medical Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments* (S.S.A. 1983).

[13]  Exertional limitations refer to restrictions imposed by a claimant's impairment(s) that affect the ability to meet strength demands of a job such as sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 404.1569a(b).

157-62, 273-75 *with supra* notes 6 &7.)  The ALJ found that the state agency consultant's

assessment was consistent with the objective and clinical findings.  (T. at 18.)  However, the

consultant's evaluation does not correspond to the medical evidence in the record.  As noted

previously, fibromyalgia is a disease where negative findings upon physical examinations are not

uncommon even if the plaintiff complains of pain, fatigue, or other symptoms.  *See Green-*

*Younger*, 335 F.3d at 108-09.  Drs. Dana and Santoni diagnosed Plaintiff with this disease and

noted on several occasions that she was experiencing pain as well as other symptoms associated

with fibromyalgia.  (T. at 104-12, 114, 143-47, 212-23, 246-61, 281.)  While they did not

complete their own RFC assessment, Drs. Dana and Santoni consistently treated Plaintiff for this

disease as well as other ailments and agreed with Mansfield's report.  If Plaintiff had greater

abilities to do work-related activities than indicated by Mansfield, both doctors could have

provided their own evaluations of Plaintiff's exertional limitations.

  The opinion of a state agency consultative examiner may constitute substantial evidence

to support an ALJ's determination, provided that there is other supporting evidence in the record.

*See* 20 C.F.R. § 404.1527(f); *see also Brunson v. Barnhart*, 2002 WL 393078, at *14 (E.D.N.Y.

Mar. 14, 2002) (noting that the opinions of non-examining sources may be considered provided

they are supported by evidence in the record).  However, in this case, the ALJ erred by relying on

the evaluation of the state agency consultant as the opinion was not supported by substantial

evidence in the record.[14]

---

[14]  In addition to her physical limitations, Plaintiff seems to assert that the ALJ did not properly
take into account her mental impairments in determining her RFC.  (T. at 6.)  However, based upon a
review of the mental evaluations in the record taken in conjunction with the additional restrictions placed
upon Plaintiff's RFC by the ALJ, Plaintiff's mental limitations were appropriately considered.  (*See* T. at
17, 19, 154-55, 164-65, 263-64, 282-84.)

As the ALJ failed to accord proper weight to the treating physicians' opinions, discuss all of the factors set forth in 20 C.F.R. § 404.1527(d)(2), and properly evaluate Plaintiff's RFC, remand is recommended.

### B.   Whether the Commissioner Erred in Finding That the Plaintiff's Subjective Complaints Were Only Partially Credible

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2005); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).  First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. § 404.1529(a) (2005).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c) (2005).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related

17

factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3) (2005).  An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

However, in cases dealing with fibromyalgia, "the credibility of the claimant's testimony regarding [his] symptoms takes on substantially increased significance in the ALJ's evaluation of the evidence[.]"  *Coyle v. Apfel*, 66 F. Supp. 2d 368, 376 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).  This is so because, as previously stated, "physical examinations will usually yield normal results - a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions."  *Green-Younger*, 335 F.3d at 108-09 (quoting *Lisa*, 940 F.2d at 45).  Thus, the Second Circuit has noted that "the absence of swelling joints or other orthopedic and neurologic deficits 'is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.'"  *Id.* at 109 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

Accordingly, negative findings in the medical records "simply confirm a diagnosis of fibromyalgia by a process of exclusion, eliminating 'other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue.'" *Id.* (quoting *Preston v. Sec'y of Dep't of Health and Human Servs.*, 854 F.2d 815, 819 (6th Cir. 1988)).

In her decision, the ALJ stated that while Plaintiff had some degree of pain and stiffness related to the fibromyalgia as well as some mental symptoms in regards to her depression, the objective medical evidence and Plaintiff's testimony at the hearing detailing her activities of daily living did not provide a basis for finding that Plaintiff had constant chronic pain.  (T. at 18.) Since the ALJ found that Plaintiff's allegations of her limitations were "not totally credible" (T. at 21), it was incumbent on the ALJ to then assess the factors set forth in 20 C.F.R. § 404.1529(c).

While the ALJ reviewed and discussed the medications Plaintiff took, the treatment she received, her symptoms, daily activities, and measures taken to relieve the symptoms, the ALJ did not properly assess these factors and take into account the diagnosis of fibromyalgia.  (T. at 18.)  This is evident from the ALJ's reference to the clinical findings being minimal as well as Dr. Dana's notations that Plaintiff was in no acute distress.  (T. at 18.)  As previously explained, "minimal" objective clinical findings is indicative of the disease and does not outright render Plaintiff's testimony to be less than credible.  The medical evidence established that Plaintiff suffered from fibromyalgia and experienced many of the symptoms that accompany such a disease, including sleep disturbances, fatigue, stiffness, headaches, and occasional depression, though her physical examinations usually yielded normal results.  (*See supra* note 5; T. at 104-12, 114, 143-47, 212-23, 246-61, 281.)  Furthermore, despite the ALJ's remarks regarding the lack of acute distress indicated in Dr. Dana's evaluations, Dr. Dana also found within some of

these same evaluations that Plaintiff had tenderness and discomfort all over.  (*See* T. at 105-12, 114, 212, 216, 218, 221-23, 281.)

Moreover, in assessing Plaintiff's efforts to relieve her symptoms, the ALJ noted that while Plaintiff exercised at home and did yoga, she never attended physical therapy or participated in other exercises such as swimming or walking; the ALJ found that Plaintiff's lack of exercise was "contradictory to her condition."  (T. at 18.)  Despite erroneously rendering her own opinion on the regimen of exercise Plaintiff should have completed, the medical records indicate that Plaintiff did in fact attend physical as well as massage therapy and was exercising daily.  (T. 145-46, 198-210, 219, 235-46; *see also* T. at 289-90, 299.)  More pointedly, the ALJ questioned Plaintiff during the hearing as to whether she had ever attempted physical therapy to which she responded that she had attended physical therapy.  (T. at 289.)  The record also established that contrary to the ALJ's statement that Plaintiff did not walk, Plaintiff did in fact attempt to walk short distances.  (T. at 57.)  The ALJ's recitation of Plaintiff's lack of efforts to alleviate her pain is not supported by the record.

Additionally, in assessing Plaintiff's daily activities, the ALJ stated that the record demonstrated that she could do light housekeeping, shopping, light cooking, driving, as well as pay bills, visit with friends, attend church, and read a book and that these activities were consistent with an ability to do light work.  (T. at 18.)  However, the ALJ's portrayal of Plaintiff's abilities is not consistent with the testimony presented or the record.  As to her ability to drive, Plaintiff testified that she rarely drives or goes out and that she has to take medications prior to driving just to keep herself alert.  (T. at 56, 298.)  While the record does establish that she can do light housekeeping and cooking, it further indicates that it is quite difficult for her to

20

take care of her personal needs.  (T. at 55-56.)  For example, Plaintiff stated that it is hard for her to shower even with the aide of a "grab bar."  (T. at 55-56.)  Plaintiff also stated she is unable to mow the lawn or do yard work, she can barely wash her dishes, when she goes shopping she needs help loading and unloading the groceries, she cannot read as she used to due to difficulty with concentration, fatigue, and headaches, doing the laundry is difficult without help from her son, and she can do no home repairs.  (T. at 56-58.)

Finally, in determining Plaintiff's credibility as to her ability to work on any level, the ALJ interjected her own opinion and speculated that had Plaintiff performed more consistently on the test administered by Mansfield, he could have found that Plaintiff was capable of doing more than sedentary work.  (T. at 18.)  The ALJ should not have made such a judgment since obviously she is not Plaintiff's treating physician.

Based upon the records in evidence as well as testimony during the hearing, the ALJ's conclusion that Plaintiff's testimony was only partially credible is not supported by substantial evidence.  The ALJ failed to properly consider the factors set forth in 20 C.F.R. § 404.1529(c) as well as the medical findings associated with fibromyalgia in conjunction with Plaintiff's statements of her subjective symptoms.  Thus, the Court recommends remand on this issue as well.

**C.**    **Whether the Commissioner Met His Burden of Proof at Step 5 of the Sequential Analysis in Finding That Other Work Exists in Significant Numbers in the National Economy That the Claimant Can Still Perform Despite Any Limitation**

Plaintiff argues that even though the vocational expert testified that jobs existed in the national and regional economy that Plaintiff could perform, such testimony was based on an

erroneous residual functional capacity.  (Dkt. No. 5 at 11-12.)

As stated above, this Court is recommending remand with regard to the ALJ's finding as to Plaintiff's RFC, specifically that Plaintiff could perform light work with certain other restrictions.  Given that recommendation, it follows that this Court's view is that the hypothetical provided to the vocational expert was also in error and, therefore, remand would be appropriate to determine the availability of jobs in the national and regional economy based on a revised RFC determination.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[15] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: November 5, 2007
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[15]  Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2005).